# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KT4 PARTNERS LLC, and SANDRA MARTIN CLARK, as trustee for MARC ABRAMOWITZ IRREVOCABLE TRUST NUMBER 7, | ) ) ) ) ) | C.A. No. N17C-12-212 EMD CCLD |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| PALANTIR TECHNOLOGIES INC., and DISRUPTIVE TECHNOLOGY ADVISERS LLC, | ) ) ) ) | |
| Defendants. | ) | |

Submitted: April 12, 2021[1]
Decided: July 16, 2021

*Upon Plaintiffs' Motions in Limine*
***DENIED***

Bartholomew J. Dalton, Esquire, Michael C. Dalton, Esquire, Dalton & Associates, P.A., Wilmington, Delaware, Barry S. Simon, Esquire, Jonathan B. Pitt, Esquire, Stephen Wohlgemuth, Esquire, Williams & Connolly LLP, Washington, D.C., *Attorneys for Plaintiffs KT4 Partners LLC and Sandra Marsha Clark, as Trustee for Marc Abramowitz Irrevocable Trust Number 7.*

Blake Rohrbacher, Esquire, Kelly E. Farnan, Esquire, Kevin M. Gallagher, Esquire, Katharine L. Mowrey, Esquire, Ryan D. Konstanzer, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, John C. Hueston, Esquire, Moez M. Kaba Esquire, Hueston Hennigan LLP, Los Angeles, California, Kevin J. Orsini, Esquire, Rory A. Leraris, Esquire, Cravath Swaine & Moore LLP, New York, New York, *Attorneys for Defendant Palantir Technologies Inc.*

Elena C. Norman, Esquire, Paul J. Loughman, Esquire, Lakshmi A. Muthu, Esquire, Caleb G. Johnson, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, John Douglas Bethay, III, Esquire, Maynard Cooper & Gale LLP, Birmingham, Alabama, *Attorneys for Defendant Disruptive Technology Advisers LLC.*

**DAVIS, J.**

---

[1] D.I. No. 476.

## I.    INTRODUCTION[2]

This civil action is assigned to the Complex Commercial Litigation Division of this Court.  Plaintiffs KT4 Partners LLC ("KT4") and Sandra Marsha Clark, as trustee for the Marc Abramowitz Irrevocable Trust Number 7 (the "Trust" and, collectively with KT4, the "Plaintiffs") are stockholders of Defendant Palantir Technologies Inc. ("Palantir" or the "Company").  Plaintiffs allege Palantir and Defendant Disruptive Technology Advisers LLC ("DTA" and, collectively with Palantir, the "Defendants") tortiously interfered with a prospective business relationship Plaintiffs had with CDH Investments ("CDH") to sell Plaintiffs' stock through a secondary securities transaction.  Plaintiffs also allege that Defendants' conspired to steer CDH away from Plaintiffs so that Defendants could appropriate the stock transaction for themselves.

On December 14, 2017, Plaintiffs filed a complaint (the "Complaint")[3] seeking compensatory and punitive damages from Defendants for (1) tortious interference with prospective contractual relations; and (2) civil conspiracy to commit tortious interference with prospective contractual relations.  On December 11, 2020, Defendants moved for summary judgment (the "SJ Motions").[4]  Plaintiffs opposed the SJ Motions on January 11, 2021.[5]  On March 23, 2021, the Court held a hearing on the SJ Motions and the Motions.[6]  The Court granted in part and denied in part the SJ Motions on June 24, 2021.[7]

---

[2] The factual background of this case is set out in *KT4 Partners LLC v. Palantir Techs., Inc.*, 2021 WL 2823567 (Del. Super. June 24, 2021) (the "Summary Judgment Decision").  Terms not otherwise defined herein shall have meaning ascribed to them in the Summary Judgment Decision.

[3] D.I. No. 1, Compl.

[4] D.I. Nos. 689, 693.

[5] D.I. Nos. 703, 706.

[6] D.I. No. 742.  At the hearing, the Court also heard argument on Plaintiffs' two *Daubert* motions (the "Motions").

[7] D.I. No. 756.

Plaintiffs have moved, in *limine*, to exclude two experts, Zachary Abrams and Dr. Yael Hochberg, designated by Palantir. Palantir opposed the Motions. For the reasons set forth below, the Court will **DENY** the Motions.

## II. BACKGROUND[8]

### A. THE EXPERT TESTIMONY—ZACHARY ABRAMS

Palantir seeks to admit expert testimony from Zachary Abrams. Mr. Abrams earned a Master of Business Administration degree from the University of Pennsylvania.[9] Mr. Abrams has served as a portfolio manager of private equity firms specializing in secondary securities transactions for nearly 20 years.[10] Mr. Abrams provides that, in those roles, he worked on at least 100 secondary transactions from negotiation through due diligence and execution.[11]

Mr. Abrams developed a six-stage framework for evaluating whether a transaction is likely to close.[12] Those stages are (i) identification of the seller; (ii) preliminary discussions; (iii) preliminary due diligence; (iv) agreement on terms; (v) final due diligence and approvals; and (vi) preparation of documents.[13] Mr. Abrams testified at a deposition that he applies this framework when evaluating transactions with his current firm.[14]

Mr. Abrams applied this framework to the facts of this case. Mr. Abrams opines that the transaction between Plaintiffs and CDH would have failed regardless of any interference. In reaching this opinion, Mr. Abrams identified several "red flags" that, according to him, diminished the probability of a closing. The red flags included (i) the slow pace of the

---

[8] The Court relies upon the Summary Judgment Decision's Background section, Section II, for the factual and procedural portions of this memorandum opinion.
[9] D.I. 735, Ex. 1 ¶¶ 5-7.
[10] *Id.* ¶ 1.
[11] Ex. 2 at 29-30.
[12] Ex. 1 ¶ 13, 46.
[13] *Id.* ¶¶ 47-63.
[14] Ex. 2 at 113-14.

transaction; (ii) the size of the transaction; (iii) the fact that the transaction was being negotiated at the same time as Palantir's primary (Series K) financing round; and (iv) the independent attractiveness of a primary investment in Palantir.[15]  Mr. Abrams' ultimate opinion is that the transaction had no reasonable certainty or expectation of closing because it was unlikely that CDH would agree to material terms, including price.[16]

### B.  THE EXPERT TESTIMONY—DR. YAEL HOCHBERG

Palantir also seeks to admit expert testimony from Dr. Yael Hochberg.  Dr. Hochberg earned a Doctorate degree in Finance from Stanford University and a Master of Arts degree in Economics at Stanford University.[17]  Dr. Hochberg currently serves as a Professor of Entrepreneurship and Finance at Rice University.[18]  Dr. Hochberg is a Visiting Professor and Research Assistant at the Massachusetts Institute of Technology and Duke University.[19]  Dr. Hochberg has taught finance courses at the University of Chicago, Cornell University, Northwestern University, and Hong Kong University.[20]  For the past 20 years, Dr. Hochberg academically focused on venture capital, private equity, and entrepreneurial finance.[21]  Much of Dr. Hochberg's work has been published in peer-reviewed academic journals and mainstream newspapers and magazines dedicated to markets.[22]

Dr. Hochberg was asked to opine on the customary practices and economic incentives of private technology companies in raising capital through both primary offerings and secondary trades.  Dr. Hochberg provided an overview of the structure and details of these transactions, the

---

[15] Ex. 1 ¶¶ 106-24.
[16] *Id.* ¶ 124.
[17] D.I. 737, Ex. 1 ¶ 1-2.
[18] *Id.* ¶ 1.
[19] *Id.*
[20] *Id.* ¶ 3.
[21] *Id.* ¶ 4.
[22] *Id.* ¶ 5.

pros and cons of those transactions relative to each other, the negotiation process and the factors involved in it, and the role of private companies in facilitating secondary transactions.[23] Dr. Hochberg purportedly applied this knowledge to the facts of this case, including the potential benefits CDH may have seen in pursuing a primary, rather than secondary, investment.[24]

Dr. Hochberg provides the opinion that the transaction was unlikely to close regardless of any interference. In arriving at this opinion, Dr. Hochberg cites to: (i) the presence of multiple offers of different stock at different prices; (ii) the presence of multiple offers of the same stock at different prices; (iii) the size of the proposed transaction; (iv) the time-consuming nature of coordinating a deal with many parties; and (v) CDH's demanding due diligence requests.[25] Finally, Dr. Hochberg opines that Palantir's actions, including in contacting CDH, at the time of the proposed transaction were customary and economically advantageous.[26]

### III.    APPLICABLE LEGAL STANDARD

The admissibility of expert testimony is governed by Rule 702 of the Delaware Rules of Evidence ("Rule 702"). Rule 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[27]

When applying Rule 702, Delaware Courts have adopted the U.S. Supreme Court's holdings in *Daubert v. Merrell Dow Pharmaceuticals*.[28] *Daubert* requires the trial judge to act

---

[23] *Id.* ¶¶ 20-72.
[24] *Id.* ¶¶ 90-100; Ex. 2 at 11-12, 63-66, 80, 177, 182, 237.
[25] Ex. 1 ¶ 90; Ex. 2 at 63-66, 159, 181.
[26] Ex. 1 ¶¶ 100-09.
[27] D.R.E. 702.
[28] 509 U.S. 579 (1993).

5

as gatekeeper and determine whether the expert testimony is relevant and reliable and whether it will assist the trier of fact.[29]  The Delaware Supreme has adopted a five-part test for the Court to consider when determining the admissibility of scientific or technical testimony.  The Court must decide whether:

> (i) the witness is qualified as an expert by knowledge, skill experience, training or education; (ii) the evidence is relevant and reliable; (iii) the expert's opinion is based upon information reasonably relied upon by experts in the particular field; (iv) the expert testimony will assist the trier of fact to understand the evidence or to determine a fact in issue; and (v) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[30]

## IV.    PARTIES' CONTENTIONS

### A.  THE *DAUBERT* MOTION—MR. ABRAMS

Plaintiffs contend that Mr. Abrams' opinion is based on select evidence from the record that will not assist the trier of fact.[31]  Plaintiffs claim that Mr. Abrams' six-stage framework has no reliable basis because it never has been applied outside the litigation and has not been subject to peer review.[32]  Finally, Plaintiffs contend that Mr. Abrams' opinion uses an incorrect legal standard that sets a higher bar for the proposed transaction's probability of closing.[33]

In opposition, Palantir principally argues that Plaintiffs' objections are based on factual bases and biases that go to weight and credibility rather than admissibility.  On the merits, Palantir claims Mr. Abrams considered the entire record in reaching his opinions.[34]  Palantir asserts that Mr. Abrams' experience with secondary transactions does not need peer reviewing because he is not an academic or scientific expert.[35]  Palantir also points out that Mr. Abrams

---

[29] *See Daubert*, 509 U.S. at 582.
[30] *Cunningham v. McDonald*, 689 A.2d 1190, 1193 (Del. 1997) (internal quotation marks and citations omitted).
[31] Plaintiffs' Abrams Mot. at 13-18.
[32] *Id.* at 18-21.
[33] *Id.* at 21-23.
[34] Palantir Abrams Opp. at 9-21.
[35] *Id.* at 21-27

6

regularly applies his framework in his role as a portfolio manager. Finally, Palantir contends that Mr. Abrams has not misstated the law, and in any event, the Court can correct any misstatements.[36]

### B. THE *DAUBERT* MOTION—DR. HOCHBERG

Plaintiffs do not oppose all of Dr. Hochberg's opinions or testimony. Plaintiffs do not challenge Dr. Hochberg's testimony regarding an overview of primary and secondary transactions in the private technology industry.[37] Instead, Plaintiffs make similar select evidence and incorrect-standard arguments as raised in connection with Mr. Abrams' opinions. Specifically, Plaintiffs contend that (i) Dr. Hochberg ignored evidence undercutting her opinion because that evidence was less favorable to Palantir; and (ii) Dr. Hochberg's opinion that it would be acceptable for Palantir to pursue the CDH deal for itself contravenes the applicable legal standards for this civil proceeding.[38]

With respect to Dr. Hochberg, Palantir restates its weight and credibility arguments. Palantir contends Dr. Hochberg's opinions are reliable and relevant because (i) of her extensive academic experience with these issues; (ii) the opinions are based on the entire record; and (iii) the opinions will assist the jury in understanding the complexities of secondary transactions and the various reasons why they may fail to close without any interference.[39] Finally, Palantir asserts that Dr. Hochberg's opinion regarding the acceptability of Palantir's actions is admissible as a custom and practice and does not purport to express a legal standard.[40]

---

[36] *Id.* at 27-30.
[37] Plaintiffs' Hochberg Mot. at 1.
[38] *Id.* at 16-24.
[39] Palantir Hochberg Opp. at 24-30.
[40] *Id.* at 30-33.

## V. DISCUSSION

### A. THE COURT WILL NOT EXCLUDE MR. ABRAMS' TESTIMONY

The Court finds that Mr. Abrams' testimony is relevant. Mr. Abrams' opinion is based on specialized knowledge, *i.e.*, his experience as a portfolio manager at firms that deal exclusively in the secondary market. The Court finds that Mr. Abrams' testimony could aid the trier of fact in determining whether the transaction had a reasonable probability of closing. Plaintiffs' objection that Mr. Abrams' opinion is based on selected evidence appears overstated as the report and deposition testimony indicate he considered the entire record. The Court finds that Plaintiffs' objections to Mr. Abrams' opinions go to weight and credibility, not admissibility. The Court will not allow Mr. Abrams to assess the credibility of other witnesses; however, the Court will allow Mr. Abrams to explain the bases for his conclusions, including why he discredited certain facts favorable to Plaintiffs' theory of the case. Plaintiffs will have the opportunity to cross-examine Mr. Abrams and expose any weaknesses in his testimony or opinions. Plaintiffs do not argue the testimony is otherwise prejudicial.

Mr. Abrams' testimony seems reliable. Contrary to Plaintiffs' objections, an expert need not always have the methodology subject to peer review. The inquiry is fact-specific and here, it would make little sense for a non-scientific, non-academic expert like Mr. Abrams to publish his framework in a journal or otherwise be subject to peer review. Mr. Abrams' report indicates that he applied a methodology developed through his 20 years of transactional experience to the facts of the case. The methodology does not appear to have been manufactured for the litigation. In essence, Plaintiffs disagree with Mr. Abrams' unfavorable conclusion, contending factual misunderstanding and bias. The Court finds that these challenges go to weight and credibility and should be explored at trial, not excluded wholesale.

Finally, the Court does not find that Mr. Abrams' opinions rely on a higher standard than that governing tortious interference claims. As explained in the Summary Judgment Decision, "expectancy" and "probability" are used interchangeably under Delaware law.[41] The semantic difference is not material; however, to the extent Mr. Abrams does use a higher standard, his testimony can be undercut by cross-examination. Finally, the Court will instruct the jury on the proper legal standard.

## B.    THE COURT WILL NOT EXCLUDE DR. HOCHBERG'S TESTIMONY

The Court finds that Dr. Hochberg's testimony is relevant. Dr. Hochberg's opinion is based on her extensive academic and research experience and therefore constitutes specialized knowledge. Dr. Hochberg opined on the entire record and set forth specific reasons for her conclusions. These conclusions will aid the trier of fact in assessing whether the proposed transaction had a reasonable probability of closing. Dr. Hochberg's report and deposition testimony do not support Plaintiffs' objections that she mischaracterized the record or inappropriately considered facts inapplicable to the case. As with Mr. Abrams, Plaintiffs can challenge Dr. Hochberg as to facts and bias. These challenges will go to credibility and weight, not admissibility. At trial, the Court will afford Plaintiffs a full opportunity to cross-examine Dr. Hochberg.

The Court finds that Plaintiffs' objections to Dr. Hochberg's reliability mirror their relevancy arguments. For that reason, the Court will overrule Plaintiffs' objections. Dr. Hochberg's report and deposition testimony indicate that Dr. Hochberg applied analyses developed through research, teaching experience, and published articles before concluding that there was no reasonable probability of a closing. Disagreement with that conclusion will be

---

[41] *KT4 Partners*, 2021 WL 2823567, at *20 & n. 261.

9

developed on cross-examination or through other experts and facts. That is especially so since Plaintiffs charge Dr. Hochberg with overlooking evidence favorable to them and not assigning that evidence enough importance.

Finally, it is not clear that Dr. Hochberg will "instruct" the jury on the proper legal standard. Dr. Hochberg's opinion that Palantir's actions are customary in the private technology industry indicates an assessment of a market practice, not a legal standard by which Palantir's actions should be judged. Moreover, these statements go to Palantir's privilege defense, which is available if Palantir did not commit independent wrongful acts. To the extent Dr. Hochberg's opinion on market practice could be misconstrued by the jury as a legal standard, Plaintiffs will be able address it on cross-examination. Finally, the Court can correct or limit any mischaracterizations through curative instructions.

## VI. CONCLUSION

For the foregoing reasons, the Court will **DENY** the Motions.

Dated: July 16, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

10